# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of: | ) | |
| | ) | |
| Location history data from Google LLC generated from mobile devices. See Attachment A. | ) | Case No. **19-M-104 (DEJ)** |
| | ) | |
| | ) | |
| | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Location history data from Google LLC generated from mobile devices. See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 18: 844(i) - Arson

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Thomas Greenwich, ATF
_____
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: **Apul 30, 2019**

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin                                      Hon. David E. Jones, U.S. Magistrate Judge
_____
*Printed Name and Title*

## ATTACHMENT A

### Property To Be Searched

This warrant is directed to Google LLC and applies to:

(1) location history data, sourced from methods including GPS, wi-fi, and Bluetooth, generated from devices and that reported a device location within the geographical region bounded by the latitudinal and longitudinal coordinates, dates, and times below ("Initial Search Parameters"); and

(2) identifying information for Google Accounts associated with the responsive location history data.

## ATTACHMENT B

### Particular Items to Be Seized

### I.   Information to be disclosed by Google

Google shall provide responsive data (as described in Attachment A) to the government pursuant to the following process:

1.   Google shall query location history data based on the Initial Search Parameters specified in Attachment A.

2.   For each location point recorded within the Initial Search Parameters, Google shall produce to the government anonymized information specifying the corresponding unique device ID, timestamp, coordinates, display radius, and data source, if available (the "Anonymized List").

3.   The government shall review the Anonymized List in order to prioritize the devices about which it wishes to obtain identifying information.

4.   Google is required to disclose to the government identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Account associated with each device ID about which the government inquires.

## II.    Information to Be Seized

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 844(i) that were committed on or about January 10 and February 1, 2019 involving the residences at 4047 N. 7th Street, Milwaukee, WI, and 5915 N. 42nd Street, Milwaukee, WI.

## Target Location 2: Area Around 5915 N. 42nd Street

- Date: 01/31/2019 - 02/01/2019

- Time Period (including time zone): 2300hrs (CST) 01/31/2019 - 0130hrs (CST) 02/01/2019

- Target Location # 2: Geographical area identified as a polygon defined by the following latitude/longitude coordinates and connected by straight lines:
    - Point 1: 43°7'30.76"N-87°57'52.63"W
    - Point 2: 43°7'30.36"N-87°57'52.64"W
    - Point 3: 43°7'30.38"N-87°57'54.35"W
    - Point 4: 43°7'30.77"N-87°57'54.36"W



## Target Location 1: Area Around 4047 N. 7th Street

- Date: 01/10/2019

- Time Period (including time zone): 01:45hrs (CST) - 04:30hrs (CST)

- Target Location # 1:    Geographical area identified as a polygon defined by the following latitude/longitude coordinates and connected by straight lines:

    - Point 1: 43°5'26.13"N- 87°55'10.72"W
    - Point 2: 43°5'26.14"N- 87°55'12.66"W
    - Point 3: 43°5'25.54"N- 87°55'12.66"W
    - Point 4: 43°5'25.50"N- 87°55'10.73"W



## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Thomas J. Greenwich, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a warrant to search information that is stored at premises controlled by Google, a provider of electronic communications service and remote computing service headquartered in Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a warrant under 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government the information further described in Attachment B.I. The government will then review that information and seize the information that is further described in Attachment B.II.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been since May 2018. As part of my professional experience, I have participated in State and Federal investigations involving the illegal possession of firearms and narcotics. Previously, I was employed by the Federal Air Marshal Service with my last Field Office being located in Chicago, Illinois for approximately 9 years. I worked as a police officer in Cook County, Illinois and Glen Ellyn, Illinois prior to my time as a Federal Air Marshal. I earned a Masters of Arts Degree in Intelligence Studies with Emphasis in Terrorism from the American Military University in 2013. I also received both a Bachelor's Degree with honors in Criminal Justice from the University of Phoenix in 2010. I have participated in the service of state search and seizure warrants and have seized or assisted in seizing contraband, including firearms, ammunition, documentary evidence and contraband. I further state that I am a federal agent as delineated in Title 18, United States Code, Section 3051.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 844(i) (maliciously damaging or destroying by means of fire or explosive any building used in interstate commerce) has been committed by an Unknown Suspect. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

6. Based on my training and experience, I know that cellular devices, such as mobile telephones, are widely-used wireless devices that enable their users to send and receive wire and/or electronic communications using the networks provided by cellular service providers. In order to send or receive communications, cellular devices connect to radio antennas that are part of the cellular network called "cell sites," which can be mounted on towers, buildings, or other infrastructure. Cell sites provide service to specific geographic areas, although the service area of a given cell site will depend on factors including the distance between towers. As a result, information about what cell site a cellular device connected to at a specific time can provide the basis for an inference about the general geographic location of the device at that point.

2

7.    Based on my training and experience, I also know that many cellular devices such as mobile telephones have the capability to connect to wireless Internet ("wi-fi") access points if a user enables wi-fi connectivity. Wi-fi access points, such as those created through the use of a router and offered in places such as homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network. In general, devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

8.    Based on my training and experience, I also know that many cellular devices feature Bluetooth functionality. Bluetooth allows for short-range wireless connections between devices, such as between a mobile device and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a mobile device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by mobile devices within the Bluetooth device's transmission range, to which it might connect.

9.    Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this technology, the phone can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the app's operation.

10.   Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every cellular phone using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

3

11.     In addition, based on my training and experience, I know that Google offers

numerous online-based services, including email (Gmail), navigation (Google Maps), search engine

(Google), online file storage (including Google Drive, Google Photos, and Youtube), messaging

(Google Hangouts and Google Allo), and video calling (Google Duo). Some services, such as

Gmail, online file storage, and messaging, require the user to sign in to the service using their

Google account. An individual can obtain a Google account by registering with Google, and the

account identifier typically is in the form of a Gmail address. Other services, such as Google Maps

and Youtube, can be used while signed in to a Google account, although some aspects of these

services can be used even without being signed in to a Google account.

12.     In addition, based on my training and experience, I know Google offers an Internet

browser known as Chrome that can be used on both computers and mobile devices. A user has the

ability to sign in to a Google account while using Chrome, which allows the user's bookmarks,

browsing history, and other settings to be synced across the various devices on which they may use

the Chrome browsing software, although Chrome can also be used without signing into a Google

account. Chrome is not limited to mobile devices running the Android operating system and can

also be installed and used on Apple devices.

13.     Based on my training and experience, I know that, in the context of mobile devices,

Google's cloud-based services can be accessed either via the device's Internet browser or via apps

offered by Google that have been downloaded onto the device. Google apps exist for, and can be

downloaded to, phones that do not run the Android operating system, such as Apple devices.

14.     Based on my training and experience, I know that Google collects and retains

location data from devices running the Android operating system when the user has enabled Google

location services. Google then uses this information for various purposes, including to tailor search

4

results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. In addition, I know that Google collects and retains data from non-Android devices that run Google apps if the user has enabled location sharing with Google. Google typically associates the collected location information with the Google account associated with the Android device and/or that is signed in via the relevant Google app. The location information collected by Google is derived from sources including GPS data, information about the cell sites within range of the mobile device, and information about wi-fi access points and Bluetooth beacons within range of the mobile device.

15. Based on my training and experience, I also know that Google collects and retains information about the user's location if the user has enabled Google to track web and app activity. According to Google, when this setting is enabled, Google saves information including the user's location and Internet Protocol address at the time they engage in certain Internet- and app- based activity and associates this information with the Google account associated with the Android device and/or that is signed in with the relevant Google app.

16. Location data, such as the location data in the possession of Google, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected via the use of Google products as described above, mobile devices that were in a particular geographic area during a particular time frame and to determine which Google accounts those devices are associated with. Among other things, this information can inculpate or exculpate a Google account holder by showing that he was, or was not, near a given location at a time relevant to the criminal investigation.

5

17.     Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

18.     Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

6

## PROBABLE CAUSE

### Fire at 4047 N. 7th St. Milwaukee, WI

19.     On January 10, 2018, at approximately 4:23 a.m., the Milwaukee Fire Department (MFD) responded to a fire at 4047 N. 7th Street in the City of Milwaukee, Wisconsin. The property is a detached home that is used as a rental property.

20.     Upon arrival, the fire crew reported heavy fire to the residence. The fire crew made entry and determined the residence was vacant. The fire burned in a "v" pattern starting from down on the ground and going to the roof. The fire then proceeded to get inside and cause major damage in the back hallway of the house. After the flames were suppressed and the fire was controlled, it was determined that the estimated damage for the building was approximately $40,000.

21.     MFD Fire Investigator Hartung determined, "The fire originated on the exterior northwest corner of the structure involving the rear door entrance. The fire spread into the structure involving the rear interior entrance and extended to the first floor kitchen. The fire also extended vertically up the rear stairway with smoke and heat reaching the second floor. The structure was unoccupied at the time of the fire and was found in a vacant state. A heavy odor of a petroleum based ignitable liquid similar to that of gasoline was present specifically at the rear of the house (exterior west side) and detached garage located at the far west end of the property adjacent to the rear alleyway." As a result, there is probable cause to believe the fire was incendiary.

22.     Patrol Officer (P.O.) Melissa Jacobs interviewed several neighbors at the time of the fire. It was reported that the previous tenants of the home were evicted approximately two weeks prior. The tenants were said to have broken windows on other vehicles parked on the street if they received parking tickets from MPD. The neighbors would make complaints to MPD in reference to

7

the amount of vehicles the tenants were parking from an automotive business that was being run out of the garage at 4047 N. 7th Street.

23. It was reported to P.O. Jacobs that the old tenants had MPD come to their home approximately 10-15 times throughout the summer in 2018. The tenants were known by the neighbors as "Sunshine" and "Rick". "Sunshine" was reported as being a female around 30 years old with a light complexion. "Rick" was a male about 30 years old with a light complexion as well. "Rick" was later identified as John P. HUNT (B/M 05-07-93) and "Sunshine" was identified as Shanitta Y. RANSOM (B/F 06-04-93).

24. MPD had previously executed a warrant at 4047 N. 7th St. on June 07, 2018, for which both HUNT and RANSOM were listed as suspects. The warrant was served and HUNT and RANSOM were charged with several drug- and gun-related offenses. (18CF002891, 18CF002892) A large amount of narcotics and several firearms were recovered from the residence during the execution of the warrant.

25. At 12:10 pm on March 05, 2019, ATF Special Agent Rick Hankins and I interviewed A.M., an employee of neighboring Messmer High School, after identifying video cameras at Messmer that covered 4047 N. 7th Street. A.M. stated that although Messmer lost the video stored on the system from the incident due to the installation of an upgraded system, that A.M. had viewed the recordings before they were lost. A.M. stated on the video recording marked at approximately 02:15 am on January 10, 2019, he saw a flickering of an orange glow going on and off for about an hour to an hour and a half by the door on the rear (northwest) side of the house at 4047 N. 7th Street. At approximately the 03:30 am mark, the entire area from ground to the second floor began to flame up. The flames extended vertically with full illumination. At approximately the 04:30 am mark, MFD arrived on scene.

8

## Fire at 5915 N. 42nd St. Milwaukee, WI.

26. At approximately 01:20 am on February 01, 2019 MFD was dispatched to 5915 N. 42nd St. in reference to a fire located at the rear of the residence. The residence at 5915 N. 42nd Street is a rental property.

27. The residence at 5915 N. 42nd St. was occupied by five people at the time of the fire: 3 adults, and 2 children. MFD Investigator, Lt. John Wetzel was on-scene and determined that the fire was an arson based on the smell of accelerant in the burn area. The residence was burned at the rear of the structure near the back door, which is consistent with the way in which the fire at 4047 N. 7th Street was set. The flames were extinguished with snow by one of the occupants of the residence. The fire caused approximately $2,500 in damage to the residence.

28. A neighbor's home security camera captured activity relevant to the fire. Specifically, security footage clips show a silver or light-colored minivan driving past the residence at a slow speed, with no headlights, and show a suspect exiting the van and walking towards the residence. Security footage also shows two suspects dressed in dark clothing running out of a driveway from behind the residence at 5915 N. 42nd Street, while a bright glow develops behind the residence.

29. MPD Officers interviewed the occupants of the residence while on scene. J.M. lived at the residence with her two children. J.M. had previously lived with her boyfriend John P. Marks at the residence until his death on November 12, 2018. J.M. indicated that she has been having issues with the family of Marks. Marks was an automobile mechanic and stored his tools in their garage. After Marks's death, his family members, including John P. HUNT, had been contacting J.M. to get Marks's possessions back from her. On January 27, 2019, MPD officers responded to a complaint from J.M. that Marks's family were at 5915 N. 42nd St. and attempting to take items from the garage.

9

MPD informed the parties that this was a civil matter that needed to be resolved in court, and all items were returned to the garage.

30. L.M. is the uncle of J.M. and stays with his niece from time to time, including on the night of the fire, when L.M. was concerned about his niece's safety given the actions of Marks's family. L.M. reported that on February 01, 2019 at 01:00 am, he heard a noise from the rear of the house. When he went to see what was going on he saw a bright orange glow and flames coming from the rear of the residence. L.M. alerted the other occupants of the home about the fire.

31. L.M. looked outside and saw two subjects about two houses south of the residence, walking away from the residence. L.M. described the first as being 6'00", medium build, wearing a black jacket with a black hood that was covering the head. The second subject was 5'06", slim build, wearing a black jacket with a black hood covering the head as well. Instead of chasing after the subjects, L.M. returned to the rear of the residence and put the fire out with snow. L.M. received injuries to his face and hands while putting the fire out with snow.

32. J.M. reported that she also saw two suspects wearing dark clothing, with hoods, on 42nd Street, traveling away from the residence on foot after the fire was ignited.

## CONCLUSION

34. Based on the forgoing, there is probable cause to believe that unknown suspects set incendiary fires, in violation of 18 U.S.C. § 844(i), at 4047 N. 7th Street on January 10, 2019, and at 5915 N. 42nd Street on February 1, 2019.

35. I further submit that there is probable cause to search information in the possession of Google relating to what devices were in the Target Locations described in Attachment A during the time period described in Attachment A, as well as information that identifies the Google accounts with which those devices are associated, for evidence of the crimes at issue in this case.

10

Among other things, this information can inculpate or exculpate a Google account holder by showing that he was, or was not, near a given location at a time relevant to the criminal investigation. The Target Locations and times correspond to the fires described above.

36. In order to facilitate the manageable disclosure of and search of this information, the proposed warrant contemplates that Google will disclose the information to the government in stages rather than disclose all of the information for which the government has established probable cause to search at once. Specifically, as described in Attachment B.I:

    a. Google will be required to disclose to the government an anonymized list of devices that specifies information including the corresponding unique device ID, timestamp, coordinates, and data source, if available, of the devices that reported their location within the Target Locations described in Attachment A during the time period described in Attachment A.

    b. The government will then review this list in order to prioritize the devices about which it wishes to obtain associated information.

    c. Google will then be required to disclose to the government the information identifying the Google account(s) for those devices about which the government further inquires.

37. I therefore request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c).

38. I further request that the Court direct Google to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Google, who will then compile the requested records at a time

11

convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property To Be Searched

This warrant is directed to Google LLC and applies to:

(1) location history data, sourced from methods including GPS, wi-fi, and Bluetooth, generated from devices and that reported a device location within the geographical region bounded by the latitudinal and longitudinal coordinates, dates, and times below ("Initial Search Parameters"); and

(2) identifying information for Google Accounts associated with the responsive location history data.

13

Initial Search Parameters

## Target Location 1: Area Around 4047 N. 7th Street

- Date: 01/10/2019

- Time Period (including time zone): 01:45hrs (CST) - 04:30hrs (CST)

- Target Location # 1:    Geographical area identified as a polygon defined by the following latitude/longitude coordinates and connected by straight lines:

  - Point 1: 43°5'26.13"N- 87°55'10.72"W
  - Point 2: 43°5'26.14"N- 87°55'12.66"W
  - Point 3: 43°5'25.54"N- 87°55'12.66"W
  - Point 4: 43°5'25.50"N- 87°55'10.73"W



14

**Target Location 2: Area Around 5915 N. 42nd Street**

• Date: 01/31/2019 - 02/01/2019

• Time Period (including time zone): 2300hrs (CST) 01/31/2019 - 0130hrs (CST) 02/01/2019

• Target Location # 2: Geographical area identified as a polygon defined by the following latitude/longitude coordinates and connected by straight lines:

   ▪ Point 1: 43°7'30.76"N-87°57'52.63"W
   ▪ Point 2: 43°7'30.36"N-87°57'52.64"W
   ▪ Point 3: 43°7'30.38"N-87°57'54.35"W
   ▪ Point 4: 43°7'30.77"N-87°57'54.36"W



Case 2:19-mj-00104-NJ   Filed 12/04/19   Page 21 of 25   Document 1

## ATTACHMENT B

### Particular Items to Be Seized

### I.  Information to be disclosed by Google

Google shall provide responsive data (as described in Attachment A) to the government pursuant to the following process:

1.  Google shall query location history data based on the Initial Search Parameters specified in Attachment A.

2.  For each location point recorded within the Initial Search Parameters, Google shall produce to the government anonymized information specifying the corresponding unique device ID, timestamp, coordinates, display radius, and data source, if available (the "Anonymized List").

3.  The government shall review the Anonymized List in order to prioritize the devices about which it wishes to obtain identifying information.

4.  Google is required to disclose to the government identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Account associated with each device ID about which the government inquires.

16

## II. Information to Be Seized

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 844(i) that were committed on or about January 10 and February 1, 2019 involving the residences at 4047 N. 7th Street, Milwaukee, WI, and 5915 N. 42nd Street, Milwaukee, WI.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Google, and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Google. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Google, and they were made by Google as a regular practice; and

b.      such records were generated by Google's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Google in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Google, and at all times pertinent to the records certified here the process and system functioned properly and normally.

18

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the

Federal Rules of Evidence.

_____          _____
Date                             Signature

19